**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**UNITED STATES OF AMERICA**

**VS.**                            **4:04-CR-00169-01-WRW**

**DEREK ALLMON**

**ORDER**

At Defendant's June 15, 2006, sentencing hearing, I mentioned my intention to restrict Defendant's mail. Defendant did not object. Along with the Judgment, on June 19, 2006, I entered an Order that prevented Defendant from "sending any correspondence, either directly or indirectly" to witnesses (they were listed on the order) who testified against him at his criminal trial.[1] The Order was amended on March 12, 2008, to permit Defendant to correspond with his daughter, Modesti Allmon, and brother, Kevin Allmon.[2]

It has come to my attention that Defendant has continued to attempt to circumvent these orders -- and is sometimes successful in slipping his letters past BOP review. For example, on April 19, 2007, Defendant sent letters to relatives of the wife of a witness who testified against him, and included a newspaper article referencing the website "whosarat.com."[3] BOP records also note that, at one point, Defendant attempted to "add one of these individuals (with whom he is not permitted to communicate) to his telephone list."[4] One BOP incident report indicates that Defendant "has attempted to murder witnesses and made death threats against the investigating agent and the AUSAs and their families,"[5] and "has continued this criminal activity through

---

[1]Doc. No. 670.

[2]Doc. No. 771.

[3]See *Allmon v. Bureau of Prisons, et al.*, No. 1:08-CV-01183-ZLW (Dist. Colo. filed June 5, 2008), Doc. No. 44, at 31.

[4]*Id.*, Doc. No. 44, at 42.

[5]*Id.*

threats at previous institutions."[6]  The BOP noted that Defendant maintains "illegal contacts"

through "indirect channels, compromising/defeating our (FBOP) established security/mail

screening procedures and communications monitoring efforts."[7]

Late last year, I became aware that Defendant continues to send letters of a threatening

nature to various confederates.  While the threats are not always direct, the message is clear.

Yet, somehow, these letters continue to slip through to the intended recipients.

Under 18 U.S.C. § 3582(d), a judge has the authority to prohibit this type of activity.  It

reads, in part:

> The court, in imposing a sentence to a term of imprisonment upon a defendant
> convicted of a felony set forth . . . in the Comprehensive Drug Abuse Prevention and
> Control Act of 1970 (21 U.S.C. 801 et seq.), or at any time thereafter upon motion
> by the Director of the Bureau of Prisons or a United States attorney, may include as
> a part of the sentence an order that requires that the defendant not associate or
> communicate with a specified person, other than his attorney, upon a showing of
> probable cause to believe that association or communication with such person is for
> the purpose of enabling the defendant to control, manage, direct, finance, or
> otherwise participate in an illegal enterprise.[8]

While I have attempted to use the least restrictive means -- explicitly listing witnesses

with whom Defendant could not communicate -- Defendant has continued to circumvent the

order.  The current restrictions are not tight enough.  In light of the fact that Defendant

repeatedly has convinced others to do his bidding while he is incarcerated,[9] his right to send mail

---

[6]*Id.*

[7]*Id.* at 37.

[8]18 U.S.C. § 3582(d).

[9]On April 7, 2005, while incarcerated, Defendant masterminded the attempted murder of Turna
Grisgby.
     In April, 2006, while incarcerated, Defendant directed Rodney Floyd, another inmate, to attack a
second inmate in retaliation for the inmate's cooperation with the government in the Defendant's trial.
An internal investigation revealed that, not only did Defendant order the assault by Mr. Floyd, but he also
made several threats against the United States Attorney and investigator prosecuting his case.

must be restricted even more.  Moreover, the BOP has indicated that it would make its job of

monitoring much easier if Defendant's mail and contact restrictions were tightened.

Accordingly, the following restrictions must be implemented:

1.      Defendant may communicate, via mail or phone, with only his counsel of record.

2.      Counsel of record may distribute legal materials to third parties only for the

purpose of providing necessary legal services related to Defendant's post-sentencing

proceedings.  Any distribution must be done by counsel of record and not counsel's staff.

3.      Defendant may not receive the *Arkansas Democrat Gazette*, nor any other

publication from central Arkansas.

As was the case in *United States v. Felipe*, "the crime that the Court's order is designed

to prevent is murder" and "here the risk is that the defendant will order additional murders from

jail and, in the Court's view, that real and substantial risk fully justifies the restrictions

imposed."[10]

In light of Defendant's continued attempts to circumvent BOP screening and get

correspondence to his confederates on the outside, I must weigh his right to free speech against

the interest of protecting human lives.  At this point, I believe the restrictions are the only way to

accomplish this goal.  If a change in circumstances occurs over time, I will consider modifying

Defendant's restrictions -- if the modification can be done without risk to the safety of members

of the public.

IT IS SO ORDERED this 15th day of March, 2010.

/s/ Wm. R. Wilson, Jr._____
UNITED STATES DISTRICT JUDGE

---

[10]No. S16 94 CR 395, 1997 WL 220302, at *2 (S.D.N.Y. April 29, 1997).